In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00191-CR


______________________________




JIMMY LEE NASH, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 01F0271-202




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 The surveillance video of May 31, 2001, shows Jimmy Lee Nash, in a Texarkana, Texas,
convenience store, standing across the counter from Joanna Christensen, the clerk on duty that night,
then brandishing something in his right hand, clambering over the counter, and ordering Christensen
to open the cash register drawer. She complied, and Nash took approximately $47.00 from the
register. After a brief trial, a Bowie County jury convicted Nash of aggravated robbery, and he was
sentenced to forty years' imprisonment. On appeal, Nash contends that (1) the trial court erred by
failing to submit his requested charge on the lesser included offense of robbery, (2) the evidence is
legally and factually insufficient to sustain his conviction, and (3) he did not receive effective
assistance of counsel at trial.

 Nash first contends the trial court should have charged the jury on the lesser included offense
of robbery. Nash committed aggravated robbery if he committed "robbery as defined in Section
29.02, and he . . . use[d] or exhibit[ed] a deadly weapon . . . ." Tex. Pen. Code Ann. § 29.03(a)
(Vernon 2003). A "deadly weapon" is

 (A) a firearm or anything manifestly designed, made, or adapted for the 
purpose of inflicting death or serious bodily injury; or

 (B) anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury.

Tex. Pen. Code Ann. § 1.07(17) (Vernon 2003).

 A defendant is entitled to a charge on a lesser included offense if (1) the lesser offense is
included within the proof necessary to establish the offense charged, and (2) there is some evidence
that would permit the jury rationally to find that, if the defendant is guilty, he or she is guilty only
of the lesser offense. Wesbrook v. State, 29 S.W.3d 103 (Tex. Crim. App. 2000); Rousseau v. State,
855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993); Dowden v. State, 758 S.W.2d 264, 268 (Tex.
Crim. App. 1988); Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. [Panel Op.] 1981). If
a defendant either presents evidence that he or she committed no offense or presents no evidence,
and there is no evidence otherwise showing he or she is guilty only of a lesser included offense, then
a charge on a lesser included offense is not required. Aguilar v. State, 682 S.W.2d 556, 558 (Tex.
Crim. App. 1985), quoted by Bignall v. State, 887 S.W.2d 21, 22-24 (Tex. Crim. App. 1994).

 Before a defendant is entitled to a charge on a lesser included offense, the evidence must not
merely raise the possibility of the lesser offense, but must establish the lesser included offense as a
valid rational alternative to the charged offense. Wesbrook, 29 S.W.3d at 113-14; Arevalo v. State,
943 S.W.2d 887, 889 (Tex. Crim. App. 1997). This means that the evidence must allow a jury to
conclude rationally that the defendant was guilty only of the lesser offense. Wesbrook, 29 S.W.3d
at 113-14. Therefore, if there was more than a scintilla of evidence that would allow a rational jury
to conclude Nash either had no weapon at all or had only a weapon that was not "deadly," the lesser
included offense of robbery should have been charged.

 Christensen testified Nash used an ice pick in the robbery. We have carefully and repeatedly
reviewed the store videotape, which the State argues shows Nash holding a weapon. We must
conclude the videotape does not reveal a weapon; certainly not conclusively. It is apparent that Nash
had something in his right hand, but what it was cannot be discerned-and what is visible does not
appear to be metallic or a weapon. While the videotape's lack of a clearly visible weapon does not
demonstrate that no weapon existed, it is some evidence that there was no weapon or that whatever
Nash had in his hand was, due to its type or size, not deadly. This is true especially given the
testimony of the investigating detective that, when arrested, Nash claimed not to have used a weapon
during the robbery. That, also, is some evidence. (1)

 Thus, there is some evidence that Nash was either not carrying any item that might be
considered a weapon, or that the item he was carrying was not a deadly weapon. Under this evidence
in the brief record, we must conclude that robbery was a rational alternative which could have been
found by the jury and that the trial court therefore erred by not charging the jury on the lesser
included offense. 

 The erroneous refusal to give a requested instruction on a lesser included offense is subject
to an Almanza harm analysis. Saunders v. State, 840 S.W.2d 390, 392 (Tex. Crim. App. 1992);
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). When an error occurs
despite a defendant's objection, reversal is required if the error resulted in some harm to the accused. 
Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); Almanza, 686 S.W.2d at 171. In
situations where the absence of the lesser included offense instruction left the jury with the sole
option of either convicting the defendant of the charged offense or acquitting him or her, a finding
of harm is essentially automatic because the jury was denied the opportunity to convict the defendant
of the lesser offense. Saunders v. State, 913 S.W.2d 564, 571 (Tex. Crim. App. 1995); Schroeder
v. State, No. 13-01-333-CR, 2003 WL 345331, at *5 (Tex. App.-Corpus Christi Feb. 13, 2003, no
pet. h.). That is the situation in this case. Accordingly, we must reverse.

 We must also, however, address Nash's challenge to the sufficiency of the evidence, even
though the conviction must be reversed on other grounds. See McFarland v. State, 930 S.W.2d 99,
100 (Tex. Crim. App. 1996); Foster v. State, 635 S.W.2d 710, 717 (Tex. Crim. App. 1982).

 In reviewing the legal sufficiency of the evidence, we view the relevant evidence in the light
most favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In our review, we must evaluate all of the evidence in the record, both direct and
circumstantial, whether admissible or inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex.
Crim. App. 1999). In contrast, we review for factual sufficiency by viewing the evidence in a neutral
light, favoring neither party. Johnson, 23 S.W.3d at 7; see Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996). In determining factual sufficiency of the evidence, we set aside the verdict
only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and
unjust. Johnson, 23 S.W.3d at 7; Clewis, 922 S.W.2d at 129. 

 We have already set out most of the evidence of guilt. Nash focuses his argument on the
adequacy of the proof that he used a "deadly weapon" in the course of the robbery. He asserts that
the testimony of the store clerk alone is not sufficient to support the conclusion he used a deadly
weapon. We disagree.

 Christensen testified she saw a pointed piece of metal in Nash's hand; that it was an ice pick;
that Nash came over the counter, ordered her to open the register, and threatened to kill her if she
did not; that Nash put the tip of the weapon against her body; and that she was afraid for her life. 
Steve Shelley, the investigating officer, testified that such an item could indeed cause death or
serious bodily injury and that in his opinion it was a deadly weapon. Though not revealing a
weapon, the videotape corroborates most of Christensen's testimony and clearly demonstrates Nash's
proximity to Christensen, his threatening behavior toward her, and Christensen's fearful reactions.

 Several factors can be used in determining whether an object is capable of causing death or
serious bodily injury: (1) physical proximity between the victim and the object, Tisdale v. State, 686
S.W.2d 110, 115 (Tex. Crim. App. 1984); (2) the threats or words used by the assailant, Williams
v. State, 575 S.W.2d 30 (Tex. Crim. App. [Panel Op.] 1979); (3) the size and shape of the weapon, 
Blain v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); (4) the weapon's ability to inflict death
or serious injury, id.; and (5) the manner in which the defendant used the weapon. Id. No single
factor is determinative, and each case must be examined on its own facts. Brown v. State, 716
S.W.2d 939, 946-47 (Tex. Crim. App. 1986). Either expert testimony or lay testimony may be
sufficient to support a finding. English v. State, 647 S.W.2d 667, 668-69 (Tex. Crim. App. 1983). 
Introducing the weapon in evidence assists the jury, but the jury may determine the weapon was
capable of causing death or serious bodily injury even if it is not in evidence. Id. at 669.

 In this case, there is evidence that the object was placed against the victim and that Nash
threatened to kill her, as well as testimony about the size and shape of the weapon, its ability to
inflict harm or death, and the manner in which Nash used it. Although there is some evidence that
either Nash had no weapon in his hand or that it was not "deadly," the jury's duty is to weigh the
evidence and determine the truth. The evidence set out above is both legally and factually sufficient
to allow a jury to conclude the item was a deadly weapon, and the evidence to the contrary is not so
strong as to require us to make a different determination. See Charleston v. State, 33 S.W.3d 96, 100
(Tex. App.-Texarkana 2000, pet. ref'd).

 Because we reverse on other grounds, we need not address Nash's claim of ineffective
assistance of counsel.

 We reverse the judgment and remand for further proceedings.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 11, 2003

Date Decided: August 5, 2003


Publish


1. Even Christensen's testimony contains some evidence that could be used by a rational jury
to refuse to make a deadly weapon finding. On direct examination, when Christensen was asked to
indicate the size of the ice pick she accused Nash of using, said, "It was maybe only like about-it just
went to the tip of his fingers." 


eWhenUsed="false" Name="Colorful List Accent 3"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00103-CV

                                                ______________________________

 

 

 

            IN THE INTEREST OF C.T.F., J.E.F., AND
R.D.F., CHILDREN

 

 

                                                                                                  


 

 

                                       On Appeal from the 369th
Judicial District Court

                                                          Anderson
County, Texas

                                                       Trial Court
No. XXX-XX-XXXX

 

                                                 
                                                 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                          Opinion by Justice Carter








                                                                   O P I N I O N

 

I.          BACKGROUND

            In this divorce
and child custody case, Tammie Freeman was served with a petition for divorce
on March 11, 2010.[1]  The petition requested that Mark Freeman,
Tammies husband, be named sole managing conservator of the couples three
children, with Tammie to serve as possessory conservator.  Tammie did not respond to the petition for
divorce.  Thereafter, on July 27,
2010, a petition in intervention was filed by William and Ellene Freeman, the
childrens paternal grandparents (the Freemans).  Tammie was not served with citation and a copy
of the petition in intervention.  Three
days later, the trial court entered a final decree of divorce, reflecting that
a final divorce hearing was held on that date. 
The Freemans were present at the hearing, but neither Tammie nor Mark
attended.  The trial court awarded joint
managing conservatorship of the three children to Mark and the Freemans.  The Freemans alone were given the exclusive
right to designate the primary residence of the children.  Tammie was named as possessory
conservator.  The final decree awarded
Tammie access to her children only at times mutually agreed to by the Freemans.  

            On
appeal, Tammie contends that because she was neither cited nor served with the
petition in intervention, the final decree of divorce is void.  

II.        ANALYSIS

            The
parties disagree with respect to whether (1) the Freemans were required to
serve Tammie with citation and a copy of the petition in intervention; (2)
Tammie waived her complaint regarding lack of service; and (3) that portion of
the judgment taken by Mark is valid, even if other portions of the decree are
not.  Because the Freemans were required
to serve Tammie with citation and a copy of their petition in intervention,
which complaint was not subject to waiver, we reverse that portion of the
decree awarding managing conservatorship of the children to the Freemans.

            Because
she was not served with citation and a copy of the petition in intervention,
Tammie contends the trial court erred in granting a default judgment against
her.  The record does not reflect such
service, and the Freemans do not contend service of the petition and citation
in intervention was had.  Citing Baker v. Monsanto Co., 111 S.W.3d 158
(Tex. 2003), Tammie contends that the Freemans were required to serve her with
citation.[2]  In Baker,
the defendant, Monsanto Company, had not been served with citation by any
plaintiff when the intervenors attempted to serve Monsantos counsel.  Id.
at 159.  The law firm representing
Monsanto expressly stated in a letter that they would not accept service on
Monsantos behalf.  Plaintiffs subsequently
served citation on Monsanto.  Monsantos
counsel filed an answer, but only to the petitions of those plaintiffs who
have served Monsanto.  Id. 
The Texas Supreme Court held that Monsantos subsequent appearance
relieved the intervenors of serving Monsanto with a new citation.  In so holding, the Texas Supreme Court quoted
approvingly:

Citation is necessary when the intervenor asks
affirmative relief against a defendant who has not appeared or a plaintiff who
does not, by any action subsequent to the intervention, appear thereon.
. . . 1 McDonald and Carlson, Texas
Civil Practice § 5:81 at 609 (1992 ed.) (citations omitted).

 

Id. at 160 (emphasis
added); see also Sw. Constr. Receivables,
Ltd., 162 S.W.3d at 866 (defendants actions subsequent to intervention
made issuance of new citation unnecessary). 


            Here,
Tammie was served with the original petition for divorce, but did not enter an
appearance.  The petition in intervention
sought affirmative relief against Tammie in the form of a request for managing
conservatorship of her children, alleging that naming Tammie as a joint
managing conservator of the children would not be in their best interests and
would significantly impair the childrens physical health or emotional development.  Tammie did not enter an appearance after the
petition in intervention was filed. 
Accordingly, the Freemans were required to serve Tammie with citation
and a copy of their petition in intervention. 
This they did not do.  

            The
Freemans contend that Tammie failed to preserve any complaint of defective
service of the petition in intervention by failing to make a timely request,
objection, or motion before the trial court to preserve error for appeal in
accordance with Rule 33.1 of the Texas Rules of Civil Procedure.  In Wilson
v. Dunn, 800 S.W.2d 833, 837 (Tex. 1990), the Texas Supreme Court held that
although the defendant filed a motion for new trial that did not complain of
the defective service, he could properly raise the issue on appeal.[3]
 Defective service can be raised for the
first time on appeal.  Id.; see also Benefit Planners, L.L.P. v. RenCare, Ltd., 81 S.W.3d 855, 85758
(Tex. App.San Antonio 2002, pet. denied) (holding defective service can be
raised for first time on appeal); Arredondo v. State, 844 S.W.2d 869, 871 (Tex. App.Texarkana
1992, no writ) (recognizing [i]t is well settled that . . . a failure of
service can be raised for the first time on appeal).

            In
spite of this general rule, the Freemans maintain that the issue of service was
waived because the trial court had jurisdiction over Tammie.  Here, unlike cases in which a trial court
never acquired jurisdiction over the defendant, the trial court acquired
jurisdiction over Tammie as a result of her default to the original petition
for divorce filed and served by Mark.  We
do not find this distinction to be determinative of the waiver issue.  Mark filed a divorce petition; because that
petition was properly served, the trial court had authority to enter the final
judgment of divorce in accordance with the petition and to decide child custody
issues as between Tammie and Mark.  The
petition in intervention was brought by completely different partiesthe
Freemans.  Moreover, the petition sought
relief unique to the Freemansthat they, as grandparents, be awarded managing
conservatorship of the children, together with their son Mark.  In addition, the petition requested that the
Freemans be granted the sole authority to determine the residency of the
children.  Because Tammie was never
served with the petition in intervention, the trial court was without authority
to act on the unique issues raised in the petition.  

            Tammie
maintains the entire judgment is void based upon a lack of due process in the
proceeding to determine the Freemans managing conservatorship without notice
to her.  She therefore seeks reversal of
the judgment in total.  Because the
judgment is valid as to all issues between Mark and Tammie, including
conservatorship of the children as between those parties only, we decline to
reverse the entire judgment.  Rule
44.1(b) of the Texas Rules of Appellate Procedure allows us to reverse only
that portion of the judgment awarding managing conservatorship to the Freemans.
 See Tex.
R. App. P. 44.1(b).[4]

III.       CONCLUSION

            For
the reasons stated above, we hold the trial court was without authority to act
on the Freemans petition in intervention in the absence of service of process
on Tammie.  Accordingly, we reverse that
portion of the trial courts judgment and remand this cause to the trial court
for further proceedings.  We affirm the
judgment in all other respects.

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          March 8, 2011

Date Decided:             March 9, 2011











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Govt Code Ann.
§ 73.001 (Vernon 2005).  We are unaware
of any conflict between precedent of the Twelfth Court of Appeals and that of
this Court on any relevant issue.  See Tex.
R. App. P. 41.3.





[2]Tammie
also relies on In re E.A., 287 S.W.3d
1 (Tex. 2009), for the proposition that new service is required to proceed to a
valid judgment when an amended petition seeking a more onerous judgment or one
which adds a new cause of action is filed. 
Tammie reasons that the filing of a petition in intervention requires no
less due process.  As aptly pointed out
by the Freemans, E.A. holds that a
plaintiff who amends his or her petition may serve the defendant by complying
with the filing and service requirements of Rules 21 and 21a of the Texas Rules
of Civil Procedure without regard to whether the amendment seeks a more onerous
judgment.  Id. at 4; see also Sw. Constr. Receivables, Ltd. v. Regions Bank, 162 S.W.3d
859, 865 (Tex. App.Texarkana 2005, pet. denied).





[3]Rule
324 of the Texas Rules of Civil Procedureaddressing prerequisites of appealdoes
not require that a motion for new trial raise issues of defective service of
process for preservation of error.  Wilson, 800 S.W.2d at 837.  





[4]This
Rule provides:

 

(b) Error Affecting Only Part of
Case.  If the error affects part of,
but not all, the matter in controversy and that part is separable without
unfairness to the parties, the judgment must be reversed and a new trial
ordered only as to the part affected by the error.  The court may not order a separate trial
solely on unliquidated damages if liability is contested.

 

Tex. R. App. P.
44.1(b).