**Opinion issued June 23, 2016**



In The

# Court of Appeals

For The

# First District of Texas

—————————

## NO. 01-15-01110-CV

—————————

## IN THE INTEREST OF P. RJ E.

On Appeal from the 314th District Court
Harris County, Texas
Trial Court Case No. 2014-06607J

## OPINION ON REHEARING[1]

---

[1] The Department of Family and Protective Services moved for en banc reconsideration of our opinion dated June 2, 2016. This motion maintained the Court's plenary power over the case. TEX. R. APP. P. 19.1, 49.3. We withdraw our opinion and judgment dated June 2, 2016, and issue this opinion in its place, thereby rendering the Department's motion for en banc reconsideration moot. *See Kennamer v. Estate of Noblitt*, 332 S.W.3d 559, 567 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 41 n.4 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (op. on reh'g).

The trial court terminated the parental rights of Pete's[2] biological parents, including the rights of his alleged father, Kristopher Aaron Smith. Smith argues that the Department of Family and Protective Services never served him its petition to terminate his parental rights, thereby violating his constitutional due-process rights. We agree and, therefore, reverse the trial court's judgment terminating Smith's parental rights and remand for a new trial for him.

## Background

At Pete's birth, his mother tested positive for marijuana. The hospital tried to place Pete with his mother's boyfriend, but the boyfriend tested positive for marijuana and methamphetamine. The Department eventually placed Pete in a foster home.

The Department offered Pete's mother a family service plan to regain custody. Shortly after beginning the plan, Pete's mother decided to relinquish her parental rights and, according to Pete's caseworker, "then disappeared." According to a progress report, his mother did not contact the caseworker again after deciding to relinquish her rights and did not return "letters or phone calls." The Department then filed a petition to terminate Pete's biological parents' parental rights.

Pete's mother originally identified a different man, R.J.E., as Pete's father. R.J.E. was named as Pete's father on Pete's birth certificate. The Department listed

_____

[2] To protect his privacy, we identify the child by a pseudonym only.

2

him as Pete's father in its original petition and served him. After DNA testing determined that this man was not Pete's father, the Department nonsuited him.

No one registered as Pete's father in the paternity registry; and thus, the Department began a search to identify his father. The mother identified a second potential father, stating that the father was either "Christopher Smith or Cash Smith or Cash Trill" and was "in prison." According to the Department caseworker, its initial search "did not reveal any helpful information because the name provided was too common." After more research, the Department located Kristopher Aaron Smith. The Department's attorney explained that the Department searched for "Kash Trill" on Facebook, which "led to another link for a rap web site. That rapper's name further down gave us the name Kristopher Smith. That's how we got to Kristopher Smith from Kash Trill. And that name was just then run and found in T.D.C.J. . . . ."

After discovering this information—over a month before the hearing on the Department's motion to terminate parental rights—the Department amended its petition to add "Kristopher Aaron Smith" as Pete's alleged father and to terminate his rights. That petition did not include a certificate of service, nor did the Department file a return of citation. The "Permanency Report to the Court—Temporary Managing Conservatorship," filed a few weeks before the hearing on the Department's petition, noted that Smith was "recently located" but "not yet

served." The record does not contain any evidence or allegation that Smith knew of Pete's birth.[3]

At the hearing on the Department's petition, Smith's court-appointed ad litem attorney was present and did not object to the hearing. He had "no argument" at the conclusion of the evidentiary hearing.

After the hearing, the trial court orally granted the Department's petition to terminate Pete's biological parents' parental rights. The Department then served a notice of the hearing on the form of the written order to Smith. It also served Smith notice of a permanency hearing on that order.

After being served both notices, and after the hearing on the form of the order, Smith filed a motion for a new trial, arguing that the "time lap between the [Department discovering] the whereabouts of [Smith] and trial was insufficient to both establish [Smith] as the father and properly represent his interest at trial." The trial court denied Smith's motion.

Smith appeals the trial court's order terminating his parental rights.

---

[3]    Smith's lack of knowledge of Pete's existence distinguishes this case from *Lehr v. Robertson*, 463 U.S. 248, 250, 103 S.Ct. 2985, 2987–88 (1983). In *Lehr*, the father knew of the child's existence and even visited the mother in the hospital when the child was born. *Id.*    Additionally, the statute in *Lehr* provided for notice of adoption proceedings for any alleged father that the mother identified. *Id.* at 250–51, 2999.

## Service of Petition

Smith argues that his constitutional due-process right was violated because the Department did not serve him its petition to terminate his parental rights. The Department replies that Smith did not present the due-process argument to the trial court and, thus, waived the issue. Alternatively, the Department argues that (1) it was not required to serve Smith under the Family Code but (2) it, nonetheless, served Smith by publication.

Smith argues that the "record contains no evidence that [he] was served with citation or waived service." He argues that once the Department located him, "it should have proceeded to serve him with citation."

"[D]efective service can be raised for the first time on appeal." *All Com. Floors Inc. v. Barton & Rasor*, 97 S.W.3d 723, 725–26 (Tex. App.—Fort Worth 2003, no pet.); *In re C.T.F.*, 336 S.W.3d 385, 387–88 (Tex. App.—Texarkana 2011, no pet.); *see Musquiz v. Harris Cty. Flood Control Dist.*, 31 S.W.3d 664, 667 (Tex. App.—Houston [1st Dist.] 2000, no pet.).[4] Because a trial court's jurisdiction is dependent on proper service, a party is not required to object to defective service

---

[4] Nor does *In re D.R.L.* compel an alleged father to object in a trial court when he was not served. No. 01-15-00733-CV, 2016 WL 672664, at *3 (Tex. App.—Houston [1st Dist.] Feb. 18, 2016, no pet.) (mem. op.). In *D.R.L.*, the Department "exercised diligence" in attempting to contact the father but was "unable to find him." *Id.* Nor did that case deal with an alleged father who did not receive service; the alleged father in *D.R.L.* argued that Section 161.002(b)(1), which only allows an alleged father's rights to be terminated "*after being served with citation*," was unconstitutional. *See id.* at *10; TEX. FAM. CODE ANN. § 161.002(b)(1).

in the trial court. *Wilson v. Dunn*, 800 S.W.2d 833, 837 (Tex. 1990). Thus, Smith did not waive his service argument by failing to object at the trial court.[5]

Although the Texas and U.S. Constitutions' "due process" clauses are textually different, "we regard these terms as without meaningful distinction" and, thus, traditionally follow "contemporary federal due process interpretations of procedural due process issues." *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). The "process" required by the "due process" clause "is measured by a flexible standard that depends on the practical requirements of the circumstances." *Id.* at 930. But, at a minimum, due process requires "notice and an opportunity to be heard . . . ." *Id.*

The Department argues that, under the Family Code, it was not required to serve Smith. The Family Code allows a trial court to terminate the parental rights of an alleged father without serving him notice of the termination hearing if

---

[5]     Neither does Smith's motion for new trial constitute a general appearance that would waive his right to personal service because a general appearance must be entered before the judgment that is at issue to waive personal service. *See Uche v. Igwe*, No. 05-11-00570-CV, 2012 WL 2785355, at *2 n.1 (Tex. App.—Dallas July 10, 2012, no pet.) (mem. op.) ("We note that any general appearance entered by Uche after the granting of the default judgment did not waive any defects in service or validate the default judgment"); *Williams v. Nexplore Corp.*, No. 05-09-00621-CV, 2010 WL 4945364, at *3 (Tex. App.—Dallas Dec. 7, 2010, pet. denied) (mem. op.) ("[A] general appearance which waives defects in service must *precede* any action of the court which such appearance validates"); *see also Houston Precast, Inc. v. McAllen Const., Inc.*, No. 13-07-135-CV, 2008 WL 4352636, at *3 (Tex. App.—Corpus Christi Sept. 25, 2008, no pet.) (mem. op.); *Dan Edge Motors, Inc. v. Scott*, 657 S.W.2d 822, 824 (Tex. App.—Texarkana 1983, no writ); *H. L. McRae Co. v. Hooker Const. Co.*, 579 S.W.2d 62, 65 (Tex. Civ. App.—Austin 1979, no writ).

the child is under one year of age at the time the petition for termination of the parent-child relationship or for adoption is filed and he has not registered with the paternity registry . . . .

TEX. FAM. CODE ANN. § 161.002(b)(3) (West Supp. 2015). Section c-1 provides:

The termination of the rights of an alleged father . . . does not require personal service of citation or citation by publication on the alleged father, and there is no requirement to identify or locate an alleged father who has not registered with the paternity registry under Chapter 160.

TEX. FAM. CODE ANN. § 161.002(c-1).

But the issue raised by Smith is not a question of the interpretation of these statutory provisions. Nor does Smith challenge the constitutionality of these statutory provisions. Instead, Smith contends that even if Sections 161.002(b)(3) and 161.002(c-1) do not require personal service in a parental termination proceeding of an alleged father's parental rights when his location and identity are known, due process does. We agree. *See In re E.R.*, 385 S.W.3d 552, 555, 565–65 (Tex. 2012). If the Department knows the alleged father's identity and location, due process requires it to obtain personal service on him. *See id*. Due process requires personal service in those situations because a "parental rights termination proceeding encumbers a value far more precious than any property right . . . ." *Id.* at 555. To fail to obtain personal service when the Department knows the location of a mother is "poor, hopeless, and unjustif[ied] . . . ." *Id.* The same holds true for a known, alleged father that the mother has identified and that the Department knows

7

the location of. The Department does not identify any reason, nor can we, that personal service should not be attempted in this situation.

Although *In re E.R.* addressed a mother who did not receive personal service, the Court indicated that its reasoning applies to both mothers and fathers. The Court cited with approval a case from the Iowa Supreme Court that held that a father must be personally served before his parental rights can be terminated. *See* 385 S.W.3d 552, 565 (Tex. 2012) (discussing *In re S.P.*, 672 N.W.2d 842, 848 (Iowa 2003)). Thus, the reasoning of *In re E.R.* applies to both mothers and fathers.

The Department knew of Smith's identity and address at least one month before the termination hearing. Thus, due process requires that the Department obtain personal service on Smith. *See In re E.R.*, 385 S.W.3d at 555. There is no evidence that Smith was served notice of the hearing to terminate his parental rights.

The Department also argues that, to the extent it was required to serve Smith, due process is satisfied because it did so through publication. The Family Code authorizes service of citation by publication to "persons whose names are unknown" or to an alleged father whose last name is unknown. TEX. FAM. CODE ANN. § 102.010(a) (West 2014); *Id.* § 102.010(e). But the Department knew Smith's full name and address about one month before the hearing on terminating

8

his parental rights; therefore, service by publication was not adequate.[6] *See In re E.R.*, 385 S.W.3d at 555 (service by publication of mother did not satisfy due process).

Because Smith was not served the Department's petition to terminate his parental rights in violation of his constitutional due-process right, we reverse the trial court's judgment.[7]

## Conclusion

We affirm the trial court's judgment with respect to the mother, reverse the trial court's judgment terminating the father's parental rights, and remand for a new trial with respect to the father.

---

[6] The trial court's fact findings state that Smith either "waived service of process" or was "served with citation in this suit . . . ." We cannot accept a trial court's fact findings, however, if no evidence exists to support that finding. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.); *Chitsey v. Pat Winston Interior Design, Inc.*, 558 S.W.2d 579, 581 (Tex. App.—Austin 1977, no writ). Although a court-appointed ad litem attorney for "alleged fathers" appeared at the termination hearing and did not object, his presence cannot act as a waiver of Smith's due process right to notice because "[t]he due process right to notice . . . . must be voluntary, knowing, and intelligently waived" and must be provided "in a meaningful matter." *In re K.M.L.*, 443 S.W.3d 101, 119 (Tex. 2014).

[7] Because we hold that the Family Code provision does not apply and Smith's due-process right was violated absent proper service, we do not determine whether the Family Code provision is unconstitutional or whether Smith was required to notify the attorney general of his constitutional challenge. Nor do we reach the issue of whether Smith's court-appointed ad litem attorney provided effective assistance of counsel.

Harvey Brown
Justice

Panel consists of Justices Bland, Brown, and Lloyd.